UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, and APPRENTICESHIP,
JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND;
TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY
FUND; THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION; and the
NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS,

                              Petitioner,

        -against-

TRAGER CONSTRUCTION, LLC and
TRAGER SOLUTIONS INC.

                              Respondent.

**ORDER**

19 Civ. 2571 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Trustees of the New York City District Council of Carpenters Pension Fund,

Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and

Industry Fund, Trustees of the New York City District Council of Carpenters Relief and Charity

Fund, the New York City and Vicinity Carpenters Labor Management Corporation (together, the

"Funds"), and the New York City District Council of Carpenters (the "Union") (collectively with

the Funds, "Petitioners") filed this petition (the "Petition") seeking to confirm an arbitration

award that they obtained against Trager Construction, LLC and Trager Solutions Inc.

(collectively, "Respondents") pursuant to a collective bargaining agreement and Section 301 of

the Labor Management Relations Act (the "LMRA"), as amended, 29 U.S.C. § 185.  (Pet. (Dkt.

No. 1))  Although the Petition was served on Respondents (Dkt. Nos. 8-9), they have not

opposed the Petition or otherwise appeared in this action.  For the reasons stated below, the

arbitration award will be confirmed.

## BACKGROUND

The TNew York City District Council of Carpenters Pension, Welfare, Annuity,

Apprenticeship, Journeyman Retraining and Educational and Industry Funds are multiemployer

labor-management trust funds.  (Pet. (Dkt. No. 1) ¶ 4)  The New York City District Council of

Carpenters Relief and Charity Fund is a charitable organization.  (Id. ¶ 5)  The New York City

and Vicinity Carpenters Labor-Management Corporation is a not-for-profit corporation.  (Id. ¶ 6)

And the New York City District Council of Carpenters is a labor union that is the certified

bargaining representative for certain employees of Respondents.  (Id. ¶ 7)  Respondent Trager

Construction is a Pennsylvania corporation and is an employer under the LMRA.  Respondent

Trager Solutions is a New York corporation and is an employer under the LMRA.  (Id. ¶¶ 8-9)

On April 2, 2006, Trager Construction entered into an agreement with the United

Brotherhood of Carpenters and Joiners of America (the "International Agreement") and an

Administration Form that effectuated its agreement with the Union.  (Id. ¶¶ 10-11)  In 2016,

Trager Solutions executed an Administration Form that effectuated its participation in the

International Agreement.  (Id. ¶ 12)  As signatories to these documents, Respondents are

obligated to make contributions to the Funds for every hour worked by their employees, pursuant

to the terms of the Union's collective bargaining agreement (the "CBA").  (Id. ¶ 13; International

Agreement(Dkt. No. 1-1) Article II; CBA (Dkt. No. 1-5) Article XVI, § 1)  The CBA also

requires Respondents to furnish their books and payroll records to the Funds upon request for the

purpose of conducting an audit to ensure compliance with CBA provisions requiring benefit fund contributions.  (CBA (Dkt. No. 1-5) Article XVI, § 1)

An audit of Trager Construction's books and records for the period between January 1, 2011 and March 10, 2016 showed that it had not remitted all required contributions to the Funds.  (Pet. (Dkt. No. 1) ¶ 22)  An audit of Trager Solutions' books and records for the period between March 11, 2016 and December 27, 2016 showed that it had not remitted all required contributions to the Funds.  (Id.)

The International Agreement provides that any disputes arising under that agreement be addressed pursuant to the procedures set forth in the CBA.  (International Agreement (Dkt. No. 1-1) Article VI)  The CBA provides that

> [s]hould any dispute or disagreement arise between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator. . . . The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy . . . including, but not limited to, monetary damages.  The arbitrator's award in this regard shall be final and binding upon the parties . . . and shall be wholly enforceable in any court of competent jurisdiction.  The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

(CBA (Dkt. No. 1-5) Article XVI § 12)

The CBA further provides that

> [i]n the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:
>
> (1) the unpaid contributions; plus (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus (3) an amount equal to the greater of . . . the amount of the interest charges on the unpaid contributions . . . , or . . . liquidated damages of 20% of the amount of the unpaid contributions; plus (4) reasonable attorney's fees and costs of the action.

(Id., Article XVI § 11(a))

Because Respondents are bound by the CBA, which binds employers to the policies, rules, and regulations adopted by the Funds, Respondents are also bound by the Funds' Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). (Id., Article XVI § 6) Under the Collection Policy, reasonable attorneys' fees "shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services. . . ." (Collection Policy (Dkt. No. 1-6) § V(6))

Petitioners served a notice of arbitration on Trager Construction on August 1, 2018, and served a notice of arbitration on Trager Solutions on August 7, 2018. (Notice of Hearing, Trager Construction (Dkt. No. 1-7); Notice of Hearing, Trager Solutions (Dkt. No. 1-8)) The arbitration hearing took place on November 7, 2018. (Op. & Default Award (Dkt. No. 1-9) at 1) Respondents did not appear at the hearing. (Id. at 1-2) At the hearing, Petitioners provided "uncontroverted testimony and evidence" demonstrating that (1) pursuant to the CBA, Respondents are obligated to make certain payments to the Funds; (2) the CBA authorizes Petitioners to conduct an audit of Respondents' books and records to verify that required contributions have been made; and (3) Petitioners' audit revealed that Respondents had not made all required contributions for the periods between January 1, 2011 and March 10, 2016, and between March 11, 2016 and December 27, 2016. (Id. at 2)

The arbitrator awarded Petitioners $459,781.76, which includes the total amount of the delinquency plus interest (the "Award"). (Id.) The components of the Award are as follows: (1) as to Trager Construction, $220,143.50 in principal and $63,624.59 in interest, $64,007.68 in liquidated damages, $930.72 in late payment interest, $1,191.23 for the promo fund, $18.24 in non-audit late payment interest, and $7,765 in audit costs; (2) as to Trager Solutions, $70,045.88 in principal, $10,066.24 in interest, $14,009.18 in liquidated damages, $377.00 for the promo fund, $82.50 in non-audit late payment interest, and $2,720 in audit costs.

4

As to each Respondent, the arbitrator also awarded Petitioners $400 in court costs, $1,500 in attorney's fees, and $500 for the arbitrator's fee.  (Id. at 3)  The Award provides for interest to accrue at a rate of 7% from the date of the Award.  (Id.)

On March 22, 2019, Petitioners filed the instant petition to confirm the arbitration award.  In addition to seeking confirmation of the Award, Petitioners seek interest from the date of the Award through the date of judgment, attorneys' fees and costs for the instant action, and post-judgment interest.  (Dkt. No. 1)  As noted above, Respondents have not appeared in this action or responded to the Petition in any fashion.

## DISCUSSION

## I.    APPLICABLE LAW

"It is well established that courts must grant an [arbitrator's] decision great deference."  Defuerco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  Accordingly, "confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'"  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).  "Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award."  Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 952 F.2d 794, 797 (2d Cir. 1992)).

A petition to confirm an arbitration award should be "treated as akin to a motion for summary judgment."  Where the non-movant has not responded to a petition to confirm, the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  Id. at 109-110 (citation omitted).  Even unopposed petitions to confirm arbitration awards

must "'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'"  Id. at 110 (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (internal quotation marks omitted))).

## II.   **ANALYSIS**

Here, Petitioners have demonstrated that there is no genuine issue of material fact that precludes confirmation of the Award.  Before issuing the Award, the arbitrator considered the evidence offered at the hearing, including the relevant provisions of the CBA and testimony from the auditor who had reviewed Respondents' books and records.  (See Op. & Default Award (Dkt. No. 1-9) at 2)  The arbitrator determined, "[u]pon the substantial and credible evidence of the case as a whole," that Respondents were "delinquent" in monies due under the CBA and were "obligated to pay delinquency assessment and interest on [their] delinquency, plus an Attorney's Fee to the Petitioners and the Fee of the . . . Arbitrator, Court Costs, Audit Cost, and Promotional Fund Fee in accordance with the terms and provisions of the [CBA]."  (Id. at 2-3) The arbitrator found that Respondents owed Petitioners a total of $459,781.76, with interest to accrue at 7% from the date of the award.  (Id. at 3)

This Court concludes that the Award was within the powers granted to the arbitrator under the CBA, which states that in the event that a "dispute or disagreement arise[s] between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator," who "shall have full and complete authority to decide any and all issues . . . and to fashion an appropriate remedy[,] including . . . monetary damages."  (CBA (Dkt. No. 1-5) Article XVI § 12)

"Courts are not authorized to review [an] arbitrator's decision on the merits [even in the face of] allegations that the decision rests on factual errors or misinterprets the parties' agreements." N.Y.C. Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc., No. 11. Civ. 3015 (RJH), 2011 WL 5103349, at *4 (S.D.N.Y. Oct. 27, 2011) (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation marks omitted)).  Here, of course, Respondents have made no such allegations.

A court "may vacate an arbitration award in four specific situations":

"(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . .; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In re Arbitration Between General Sec. Nat. Ins. Co. and AequiCap Program Adm'rs, 785 F. Supp. 2d 411, 417 (S.D.N.Y. Apr. 29, 2011) (quoting 9 U.S.C. § 10(a)).  Here, there is no evidence that the arbitrator's decision was unlawful, arbitrary, or in excess of the arbitrator's powers.  Accordingly, the petition to confirm the Award will be granted.

## III.  COSTS AND ATTORNEYS' FEES

Petitioners seek an award of costs and attorneys' fees expended in connection with the instant action.  "[C]ourts have routinely awarded attorneys['] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Abondolo v. H. & M.S. Meat Corp., No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4-5 (S.D.N.Y. May 12, 2008) (collecting cases).  Under the CBA, Petitioners are entitled to reasonable attorneys' fees and costs in a court action to collect delinquent funds.  (CBA (Dkt. No. 1-5) Article XVI § 11(a))  The CBA also obligates

7

Respondents to abide by all terms and conditions of agreements creating the Funds, including the Funds' Collection Policy.  The Collection Policy provides that an attorneys' fee award is to be assessed at the same rate that the Funds paid their counsel.  (Id. Article XVI § 6; Collection Policy (Dkt. No. 1-6) § V(6))

Petitioners request $1,742.50 in attorneys' fees – representing 6.2 hours of work billed at either $350 or $275/hour – and $475 in costs.  (Pet., Ex. J (Dkt. No. 1-10))  Petitioners' requested fees and costs in this action are reasonable, and reflect the rates Petitioners paid their counsel.  (Pet. (Dkt. No. 1) ¶ 38).

## IV.    POST-JUDGMENT INTEREST

Petitioners' request for post-judgment interest at the statutory rate (Pet. (Dkt. No. 1)) is also granted.  "28 U.S.C. § 1961(a) mandates post-judgment interest for civil money judgments recovered in federal district court."  Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. S&S Kings Corp., No. 19-CV-01052 (RA), 2019 WL 4412705, at *4 (S.D.N.Y. Sept. 16, 2019) (confirming arbitration award and granting pre- and post-judgment interest) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)).  "[P]ost-judgment interest 'shall be calculated from the date of the entry of the judgment.'"  Id. (quoting 28 U.S.C. § 1961(a)).

## **CONCLUSION**

For the reasons stated above, the petition to confirm the arbitration award (Dkt. No. 1) is granted.  The Clerk of Court is directed to enter judgment, confirming the arbitration award in the amount of (1) $360,080.96 as against Respondent Trager Construction, LLC, with interest accruing at 7% as of November 8, 2018, until the entry of judgment; and (2) $99,700.80 against Respondent Trager Solutions Inc., with interest accruing at 7% as of November 8, 2018, until the entry of judgment.  The Clerk will include in the judgment $1,742.50 in attorneys' fees and $475 in costs, split evenly between the two Respondents.  Post-judgment interest on the entire amount will accrue from the date of judgment at the rate provided by 28 U.S.C. § 1961(a). The Clerk of Court is directed to close this case.

Dated: New York, New York
          August 10, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge